AMERICAN ARBITRATION ASSOCIATION

COMMERCIAL ARBITRATION

CITIZEN POTAWATOMI NATION,
a federally recognized Indian tribe,

                 Claimant,

v.                                     AAA Case No. 01-15-0003-3452

THE STATE OF OKLAHOMA

                 Respondent.

## ARBITRATION AWARD

In November 2004, the Citizen Potawatomi Nation ("Nation"), a federally recognized Indian Tribe, entered into a Tribal Gaming Compact with the State of Oklahoma ("State"), Model Compact codified at 3A O.S. §281 ("Compact"). Former State Governor Brad Henry had directed negotiations with certain other tribes for the 2004 legislation adopting the State's statutory offer, which he signed for the State before that legislation was approved by referendum. Part 12 of the Compact provides for arbitration of any dispute thereunder, including but not limited to an assertion of noncompliance with the Compact, or regarding the proper interpretation of its terms and conditions. Part 5(I) governs "Sale of Alcoholic Beverages" and provides: "The sale and service of alcoholic beverages in a [Compact] facility shall be in compliance with state, federal, or tribal law in regard to the licensing and sale of such beverages." The Nation has two Compact facilities (casinos) that sell alcoholic beverages – its Grand Casino and its Firelake Entertainment Center.

Before this controversy arose, the State had never sought to apply its sales tax laws to any Indian Tribe's general sales of goods and services. In 2001, three years before the Nation accepted the State's Compact offer, a State representative from the Oklahoma Tax Commission ("OTC") visited the Nation's Vice-Chairman to request that the Nation submit sales tax reports for its tribal businesses. The OTC representative expressly assured that the request was for the OTC's own administrative



convenience and that the Nation could report "0" taxable sales because the Nation was an Indian Tribe whose sales were exempt from sales tax. The Nation acceded to the OTC's request and, for the next 13 years, filed sales tax reports showing no taxable sales. The OTC accepted those filings, without questioning the claimed exemptions.

In 2014, the OTC sent an audit demand to the Nation questioning more than $27,000,000 of exemptions claimed on the Nation's past sales tax reports. The Nation did not respond and declined to submit further sales tax reports. The OTC then filed and prosecuted an administrative complaint seeking to revoke all of the Nation's alcoholic beverage permits relying on State law providing for revocation of any alcoholic beverage permit upon noncompliance with State tax laws. In its complaint, the OTC asserted for the first time that State sales taxes apply to all sales by an Indian Tribe to nontribal members.

The Nation commenced this arbitration, claiming that (i) Part 12 of the Compact compels the State to arbitrate Compact disputes like the State's effort to divest the Nation's casinos of the right to sell and serve alcoholic beverages, and (ii) the Nation is in compliance with Part 5(I), as it has no duty to submit to the State's sales tax laws as a condition for its casinos to sell and serve alcoholic beverages. Shortly before the arbitration hearing on the Nation's claims, the OTC revoked the alcoholic beverage permits of the Nation's two casinos for failure to comply with the State's sales tax laws. After the hearing and while the Arbitrator had the case under advisement, the OTC served on the Nation a written notice threatening to close all the Nation's businesses, including its casinos, for failure to comply with the State's sales tax laws.

Part 12 contains the Compact's dispute resolution procedures. It provides for arbitration in the event either party believes the other party has "failed to comply with any requirement of this Compact, or in the event of any dispute hereunder, including, but not limited to, a dispute over the proper interpretation of the terms and conditions of the Compact." The State contends that Part 12 does not apply to this dispute as neither ABLE nor the OTC relied upon the Compact as the basis of their respective administrative proceedings. It points out that the proceedings were brought under Oklahoma statutes and regulations applicable to the licenses issued to the Nation. Accordingly, it argues that this matter is not appropriate for the Compact's dispute resolution procedures and should proceed through the States' adjudicatory processes. On the other hand, the Nation argues that the State is impermissibly attempting to impose its revenue laws on the Tribe's sale of goods and services to nontribal members.

The Nation asserts that it is in compliance with part 5(I) of the Compact which imposes upon it the obligation to conform to existing state law in the licensing and sale of alcoholic beverages.

I have previously characterized the underlying dispute in this proceeding as centering primarily on the Nation's contention that they have no obligation to accede to the State's demand for all of the Nation's businesses to collect, report and remit sales taxes on sales of goods and services to nontribal members. After conducting the hearing, I have not revised my view as to the nature of this dispute. At the hearing, the State disclaimed any assessment or collection efforts against the Nation and described its administrative revocation efforts as motivated solely by the Nation's failure to respond to a request for information. However, in the administrative proceedings directed against the Nation, the State consistently asserted the Nation was obligated to collect, report and remand sales taxes on sales to non-members. In response to this assertion by the State, the Nation argues that, for a number of reasons, the State lacks the <u>power</u> to tax on-reservation purchases by non-members of the Nation. Because these arguments contest the power of the State to apply its revenue laws to these sales, this dispute goes well beyond a mere garden variety compliance dispute, one that almost certainly would be handled in the State administrative processes. Given the nature of the Nation's attack (the authority of the State to apply its revenue laws), the broad scope of the arbitration provision in the Compact and the strong federal presumption regarding the application of an arbitration clause, I find the dispute at issue arbitrable.

The Nation asserts four independent reasons that it contends prevent the state from validly divesting the Nation of its right to sell alcoholic beverages in its casinos. First, the Nation argues that the Indian Gaming Regulatory Act ("IGRA") forbids a state from demanding or compacting for compensation for a tribe to engage in gaming-related activity, except as "necessary to defray the costs of regulating such activity." While this is a correct statement of law, the Nation has not specifically identified any provision in the Compact itself in which the State has imposed an impermissible tax, fee, charge or other assessment nor has it alleged that the State has made an improper demand for such a payment as a condition of entering into Compact negotiations. The Nation's argument in this regard seems to be that Part 5(I) of the Compact which mandates that "the sale and service of alcoholic beverages in a [Compact] facility shall be in compliance with state... law in regard to the licensing and sale of such beverages" violates IGRA in the manner in which it has been applied by the State in this controversy. Because Oklahoma law provides that the Commission may refuse to issue a license or revoke a license for "failure to comply with any of the tax laws of this state......," the State, as the Nation sees it, is using

the Compact, in conjunction with state law[1], as a subterfuge to unlawfully extract the Nation's compliance with Oklahoma's sales tax laws.

IGRA does not allow a state to convert invalid on-reservation taxes into valid taxes by merely conditioning alcohol licensure on paying the taxes. However, state taxes on non-tribal members are not categorically barred. *Flandreau Santee Sioux Tribe v. Gerlach*, 2015 WL 9273931, 14 (D.S.D. 2015). When a state imposes a tax on non-member activity on Indian land, the courts apply a flexible preemption analysis (see below) to determine whether the tax is valid or invalid. If the tax is valid, the State has the authority to require the tribe to collect, report and remit the tax. If the tax is invalid, it does not. However, in the absence of a provision in the Compact seeking an impermissible fee or the improper demand for such a fee as a condition of Compact negotiations, a state law provision that requires the holder of an alcoholic beverage license to comply with its (valid) tax laws does not violate IGRA.

Secondly, the Nation argues that 5(I) does not purport to condition the Nation's right to sell alcoholic beverages on the Nation's submission to the State's sales tax laws, even if such submission were permitted by IGRA. If the point the Nation seeks to make is that by applying for an alcohol license, a tribe does not consent to invalid off-reservation taxes, I agree. By the same token, the plain language of 5(I) requires the Nation to submit to any sales tax on non-tribal members the State has authority to impose.

Thirdly, the Nation argues that the State has failed to satisfy its burden to establish that its Sales Tax Code applies to the Nation. The Nation's argument in this regard seems a bit disingenuous. Not only does the Nation hold licenses and permits issue by the OTC, it has been paying a mixed beverage sales tax to the State for years. Nation meets the definition of a "taxpayer," as that term is defined to include any person required to file a report, a return, or remit any tax or to obtain a license or permit or to keep any records under the provisions of any state tax law. 68 O.S. § 202(d). Also, under the Sales Tax Code, the definition of person includes "...any group or combination acting as a unit, in the plural or singular number." 68 O.S. 1352(18). Accordingly, I find that the Nation is a "taxpayer" to which the tax code applies.

Finally, The Nation contends that even if the State's Sales Tax Code purported to apply to the Nation's sales of good and services to nontribal members, it would be preempted under the federal

---

[1] Oklahoma law provides that the Commission my refuse to issue a license or revoke a license of any wholesaler or retail dealer for ...." failure to comply with any of the tax laws of this state or the rules pertaining thereto 710:20-2-13.

balancing test applied in *Indian Country U.S.A. v State of Oklahoma*, 829 F.2d 967 (10th Cir. 1987) and *White Mountain Apache Tribe v Bracker*, 448 U.S. 136 (1980), among other decisions. As mentioned earlier, when the legal incidence of a tax falls on non-Indians, as it does here, no categorical bar prevents enforcement of the tax. Federal and tribal interests must be weighed against state interests. At the hearing, the Nation established (i) significant federal and tribal interests in the Nation's self-governance, economic self-sufficiency, and self-determination; (ii) the Nation alone invests value in the goods and services that it sells, does not derive such value through an exemption from State sales taxes, and imposes its own equivalent tribal sales tax on the sales; (iii) the State possesses no economic interest beyond a general quest for additional revenue in imposing a sales tax on the Nation's transactions and suffers no uncompensated economic burden arising therefrom; and (iv) the federal and tribal interests at stake predominate significantly over any possible State interest in the transactions upon which the State seeks to impose its sales tax. Accordingly, federal law protecting tribal sovereignty interests preempt and invalidates the State's sales tax on the Nation's sales in question. Nation's request for a declaratory judgment to this effect is granted

Having declared the tax invalid under existing circumstances, I address the Nation's request for injunctive relief. At the hearing on August 26, 2015, I denied the Nation's request for interim relief solely on the basis that the Nation had failed to establish imminent irreparable harm. Since that time, the State has subsequently revoked the Nation's alcoholic beverage permits and threatened to close all of its businesses, actions that threatens irreparable harm to the Compact facilities. I conclude that the Nation has satisfied all the legal requirements for injunctive relief. I hereby presently enjoin the State from taking any further action to divest the Nation's Compact facilities of the right to sell and serve alcoholic beverages or threaten other enforcement actions against them on the ground that the Nation does not comply with the State's sales tax laws.

Each party is bear its own respective costs and attorney fees.

Dated: 4/1/16 4/9/16

Arbitrator's Signature: _____
Daniel J. Boudreau